UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

MOHAMED MOHIELDEEN ABD
ALR AHMED
2167 FOX HILL DR APT 11
GRAND BLANC, ML 48439

    Plaintiff,

vs.

THE HONORABLE ALEJANDRO
MAYORKAS, Secretary of Homeland
Security
WASHINGTON D.C. 20528

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, an
agency of the United States,

C/O
OFFICE OF THE CHIEF COUNSEL
5900 CAPITAL GATEWAY DRIVE
MAIL STOP 2120
CAMP SPRINGS, MD 20588-0009

and

U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, NW
 WASHINGTON, DC 20530-0001

    Defendants

Case No.:

COMPLAINT

COMPLAINT - 1

## INTRODUCTION AND SUMMARY

1. This is an action to hold unlawful and set aside the decision of the United States Citizenship and Immigration Services (USCIS), an agency within the Department of Homeland Security, denying plaintiff Mohamed Ahmed's Application to Register Permanent Residence or Adjust Status, Form I-485, as not in accordance with law, as well as to hold unlawful and set aside the agency's promulgation of the regulation upon which its decision was misplaced, as arbitrary and capricious.

2. As will be shown, the decision was not in accordance with law in that it misconstrued the term "action" in 8 C.F.R. § 245.1(d)(2)(ii) as including such trivial events as feeing in Mr. Ahmed's Form I-589, Application for Asylum and for Withholding of Removal, or taking his biometrics, an interpretation which, if accepted, would render that section superfluous.

3. Further, it was not in accordance with law in that the regulation upon which the agency's decision was premised was not a permissible interpretation of 8 U.S.C. § 1255(c)(2), and was adopted in an arbitrary and capricious manner without offering any rationale or even explanation for it whatsoever.

## PARTIES

4.  The plaintiff is Mohamed Ahmed, a citizen and national of Sudan, currently residing in the State of Michigan. He has filed a Form I-485 with the USCIS, which has been denied.

5.  The defendant, The Honorable Alejandro Mayorkas, is the Secretary of Homeland Security, and as such the person with primary responsibility for adjudicating plaintiff's Form I-485. He resides for official purposes in the District of Columbia.

6.  The defendant, USCIS, is the agency within the Department of Homeland Security to which the Secretary has delegated his authority to adjudicate Mohamed Ahmed's Form I-485,  and which actually denied this application. It resides in the State of Maryland and the District of Columbia.

7.  The defendant, U.S. Department of Justice, is the agency responsible for the regulation which provided the basis for denying Mohamed Ahmed's Form I-485. It resides in the District of Columbia.

## JURISDICTION

8.  This being a civil action arising under 5 U.S.C. § 701 et seq., being laws of the United States pertaining to the judicial review of decisions of administrative agencies, original jurisdiction over it is vested in this Court by 28 U.S.C. § 1331.

**VENUE**

9.  Venue is properly vested in this Court in that all of the defendants reside in the District of Columbia.

10. Venue is also properly vested in this Court because  a substantial part of the events or omissions giving rise to the claim occurred here, namely the amendment of the Code of Federal Regulations adding 8 C.F.R. § 245.2(d)(2), which this action challenges as arbitrary and capricious.

**BRIEF STATEMENT OF RELEVANT FACTS**

11. On July 12, 1989, the Immigration and Naturalization Service (INS), then an agency within the Department of Justice, and predecessor in interest to the Secretary of Homeland Security and the USCIS, amended Chapter I of Title 8, Part 245 of the Code of Federal Regulations by adding  8 C.F.R. § 245.1(d)(2), which provides as indicated in paragraph X, *infra*.

12. The sole discussion by the INS of the amendment adding 8 C.F.R. § 245.1(d)(2) contained in either the Federal Register was:

The term "other than through no fault of [the applicant's] own for technical reasons" has been defined to describe three types of situations. The first, over which the applicant has no control, would not include situations such as an employer's delay in completing required documents to give to the applicant for submission to the Service. An applicant who fails to maintain status because he or she is awaiting a decision on a labor certification request from the Department of Labor or a visa petition from the Service before filing an application for adjustment has not failed to maintain

"through no fault of his own for technical reasons" and is ineligible to adjust. The examples given in the regulation are not intended to be all-inclusive.

13.  This discussion offers no rationale for this amendment.

14.  On September 8, 2017, Mohamed Ahmed entered the United States as a non immigrant B2 visa holder with authorization to remain in the United States through December 30, 2017.

15.  On December 29, 2017, Mohamed Ahmed filed an affirmative Form I-589, Application for Asylum/Withholding of Removal, and the application is currently pending.

16.  On January 28, 2018, Mohamed Ahmed was scheduled and appeared for a biometrics appointment in reference to his Form I-589.

17.  On June 6, 2020, Mohamed Ahmed was selected by the United States Department of State under the Diversity Immigrant Visa Program for the fiscal year 2021.

18.  On November 24, 2020, Mohamed Ahmed filed Form I-485, Application to Register Permanent Residence or Adjust Status.

19.  On March 22, 2021, Mohamed Ahmed was scheduled to appear for an interview in reference to his Form I-485, but failed to do so.

20.  On April 22, 2021, USCIS denied Mohamed Ahmed's Form I-485 due to his failure to appear as requested.

COMPLAINT - 5

21. On May 10, 2021, Mohamed Ahmed filed Form l-290B, Notice of Appeal or Motion, seeking to reopen USCIS's denial decision on his Form I-485.

22. On July 21, 2021, USCIS granted Mohamed Ahmed's Form I-290B and reopened his Form I-485.

23. On July 22, 2021, Mohamed Ahmed appeared for an interview in reference to his Form I-485.

24. On September 9, 2021, Mohamed Ahmed appeared for an interview in reference to his Form I-589.

25. On September 28, 2021, Mohamed Ahmed's Form I-485 was denied because "(y)ou have not established that you are eligible for adjustment under INA 245" (8 U.S.C. § 1255) because he had failed to maintain a valid status prior to the filing of his application, contrary to 8 U.S.C. § 1255(c)(2).

26. Even though Mohamed Ahmed filed his I-589 prior to the expiration of his B-2 status, the USCIS did not find that he was out of status "through no fault of his or her own or for technical reasons", which is an exception to § 1255(c)(2).

27. The USCIS reasoned that:

> a pending Form I-589can extend an alien's authorized stay in the United States, which gives the alien lawful presence. However, filing a Form I-589 does not confer a lawful status on the alien. The filing of a Form I-589 does not fulfill the applicant's requirement of having to maintain status in order to adjust under the Diversity Visa Program. USCIS records show that

from December 31, 2017, until the present, you have not maintained lawful nonimmigrant status in the United States.

Also, you are not subject to the "technical" exception under INA 245(c)(2) for adjustment of status applicants whose failure to maintain status was "through no fault of his or her own or for technical reasons."

According to INA 245(c)(2), other than an alien having an approved petition for classification as a VAWA self-petitioner, subsection (a) shall not be applicable to: "an alien … who hereafter ... is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." USCIS records show that the government has acted on your Form I-589 by receipting and processing your biometrics to complete security checks on your case. Therefore, the "technical" exception under INA 245(c)(2) does not apply in your case.

Further, the Board of Immigration Appealed (BIA) has held in Matter of L-K-, 23 l&N Dec. 677 (BIA 2004), "had the drafters of the adjustment regulation intended the pendency of an asylum application to be considered a "technical reason" for being out of lawful status, such language could easily have been included in the regulation."

Accordingly, the technical reasons exception to the requirement to maintain lawful nonimmigrant status under 245(c)(2) of the Act does not apply in your case

28. Mohamed Ahmed has never otherwise filed a Form I-485.

## STATEMENT OF APPLICABLE LAW

29. 8 U.S.C. § 1255(a) provides in relevant part that:

The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

30. 8 U.S.C. § 1255(c)(2) provides in relevant part that:

Other than an alien having an approved petition for classification as a VAWA self-petitioner, subsection (a) shall not be applicable to … (2) subject to subsection (k), an alien … who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States; …"

31. 8 U.S.C. § 1255(k) provides in relevant part that:

An alien who is eligible to receive an immigrant visa under paragraph (1), (2), or (3) of section 1153(b) of this title (or, in the case of an alien who is an immigrant described in section 1101(a)(27)(C) of this title, under section 1153(b)(4) of this title) may adjust status pursuant to subsection (a) and notwithstanding subsection (c)(2), (c)(7), and (c)(8), if-
  (1) the alien, on the date of filing an application for adjustment of status, is present in the United States pursuant to a lawful admission;
  (2) the alien, subsequent to such lawful admission has not, for an aggregate period exceeding 180 days-
        (A) failed to maintain, continuously, a lawful status;
        (B) engaged in unauthorized employment; or
        (C) otherwise violated the terms and conditions of the alien's admission.


32. The USCIS does not consider the following situations to count toward the

180-day limit contained in 8 U.S.C. § 1255(k)(2):

Any time period of unlawful status that USCIS determines was the result of a "technical violation" or through no fault of the applicant.  7 USCIS-PM B.8(E)(4) (citing 8 C.F.R. § 245.1(d)).

33. 8 C.F.R. § 245.1(d)(2) provides that:

 The parenthetical phrase *other than through no fault of his or her own or for technical reasons* shall be limited to:

(i) Inaction of another individual or organization designated by regulation to act on behalf of an individual and over whose actions the individual has no control, if the inaction is acknowledged by that individual or organization (as, for example, where a designated school official certified under § 214.2(f) of this chapter or an exchange program sponsor under § 214.2(j) of this chapter did not provide required notification to the Service of continuation of status, or did not forward a request for continuation of status to the Service); or

(ii) A technical violation resulting from inaction of the Service (as for example, where an applicant establishes that he or she properly filed a timely request to maintain status and the Service has not yet acted on that request). An individual whose refugee or asylum status has expired through passage of time, but whose status has not been revoked, will be considered to have gone out of status for a technical reason.

(iii) A technical violation caused by the physical inability of the applicant to request an extension of nonimmigrant stay from the Service either in person or by mail (as, for example, an individual who is hospitalized with an illness at the time nonimmigrant stay expires). The explanation of such a technical violation shall be accompanied by a letter explaining the circumstances from the hospital or attending physician.

(iv) A technical violation resulting from the Service's application of the maximum five/six year period of stay for certain H-1 nurses only if the applicant was subsequently reinstated to H-1 status in accordance with the terms of Public Law 10I-656 (Immigration Amendments of 1988).

## CAUSES OF ACTION

I.  THE USCIS'S DENIAL OF MOHAMED AHMED'S FORM I-485 WAS NOT IN ACCORDANCE WITH LAW BECAUSE ISSUING A FEE RECEIPT OR TAKING BIOMETRICS IS NOT AN "ACTION" WITHIN THE MEANING OF 8 CFR 245.1(d)(2)(ii) IN THAT IT IS NOT A DECISION

34. The term "action" in 8 C.F.R. § 245.1(d)(2)(ii) means a "decision". *Matter of L- K-*, 23 I. & N. Dec. 677, 680 (B.I.A. September 30, 2004) ("Under

applicable asylum regulations, asylum officers [acting on behalf of the DHS] are authorized to approve, deny, refer, or dismiss the asylum application. *See* 8 C.F.R. §§ 1208.14(b), (c) (2004); *see also* 8 C.F.R. § 1208.19 (2004) [describing the various types of 'decisions' of an asylum officer, including one to 'refer an asylum application']. We find that any one of these constitutes an 'action' on the part of the DHS"). See also 5 U.S.C. § 551(13) ("'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[1];")

35. Neither "receipting (nor) processing (Mohamed Ahmed's) biometrics to complete security checks" on his Form I-589 is a decision of any sort.

36. Nor was it an approval, denial, referral, dismissal, the adoption of an agency rule, nor an order, license, sanction, relief, or the equivalent or denial thereof.

37. Therefore, to the extent that the USCIS denied Mohamed Ahmed's Form I-485 because it supposedly took "action" upon his Form I-589 by receipting it and/or processing his biometrics to complete his security checks on that form, its decision was not in accordance with law.

---

[1] "(F)ailure to act" obviously is not included in the definition of "action" contained in 8 C.F.R. § 245.1(d)(2)(ii) since it is precisely situations in which the agency fails to act on a timely application to maintain status which this regulation excepts from the § 1255(c)(2) bars.

WHEREFORE the Court should hold unlawful and set aside the
denial of Mohamed Ahmed's Form I-485.

II. THE USCIS'S DENIAL OF MOHAMED AHMED'S FORM I-485 WAS
    NOT IN ACCORDANCE WITH LAW BECAUSE THE MERE FACT
    THAT USCIS REGULATIONS DID NOT EXPRESSLY STATE THAT
    APPLYING FOR ASYLUM IS AN EXCEPTION TO 8 U.S.C. §
    1255(c)(2) DOES NOT ESTABLISH IT IS NOT WHEN IT FALLS
    SQUARELY WITHIN THE EXCEPTION SET FORTH IN 8 CFR
    245.1(d)(2)(ii).

38. Nevertheless, the USCIS also denied Mohamed Ahmed's Form I-485
    because:

    the Board of Immigration Appealed (BIA) has held in Matter of L-K-, 23
    l&N Dec. 677 (BIA 2004), "had the drafters of the adjustment regulation
    intended the pendency of an asylum application to be considered a
    "technical reason" for being out of lawful status, such language could easily
    have been included in the regulation."
    Further, the Board of Immigration Appealed (BIA) has held in Matter of L-
    K-, 23 I&N Dec. 677 (BIA 2004), "had the drafters of the adjustment
    regulation intended the pendency of an asylum application to be considered
    a 'technical reason' for being out of lawful status, such language could
    easily have been included in the regulation. In *re L--- K* , 23 I. & N. Dec.
    677, 680 (B.I.A. September 30, 2004).

39. The actual holding of *L-K-* was "we find that the 'technical reasons' for

    being out of lawful status end when the DHS acts other than favorably on a

    pending asylum application. We conclude that an 'action' by the DHS does

    not necessarily require a final adjudication on the merits of an asylum

    application, as the respondent appears to argue." *Id.* at 680.

40.  Accordingly, the language from *L- K-* quoted by the USCIS was *dictum*. *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 894 n.11 (D.C. Cir. 1997). ("The term dictum refers to an expression in an opinion which is not necessary to support the decision reached by the court.' BALLENTINE'S LAW DICTIONARY 346 (3d ed. 1969)."). See *ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 516 n.11, 108 S. Ct. 805, 817 (1988) ("Both the District Court and the Court of Appeals mentioned various reasons why the Interior Secretary's interpretation of the Act might not be entitled to deference even if it were a reasonable interpretation. But since in the end the District Court, like the Court of Appeals, concluded that the agency's decision was not "reasonable," 586 F. Supp., at 1280, its additional comments, like those of the Court of Appeals, were pure dictum, and there is no reason to address them here."), *Am. Postal Workers Union v. United States Postal Serv.*, C.A. No. 85-2154 WBB, 1989 U.S. Dist. LEXIS 7914, at *25-26 (July 10, 1989) ("the arbitrator concluded that 'on the basis of the foregoing, the grievances are not arbitrable…. . As defendants point out, the arbitrator indicated in several other passages of the award that he read the collective bargaining agreement to waive all rights of probationary employees to challenge their dismissals, including, presumably, the right to sue. But having found that the grievance procedure did not cover probationary employees, the arbitrator's

job was done, and any additional interpretation of the collective bargaining agreement was dictum, and not a ruling on the merits as defendants claim.").

41.  Further, this dictum is unpersuasive, inasmuch as if it were adopted it would render the regulation a nullity, in that none of the applications to which it might be applied, such as application for extension of stay or change of status, were expressly included in the regulation. *Corley v. United States*, 556 U.S. 303, 314 (2009) ("One of the most basic interpretive canons, that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'*Hibbs* v. *Winn*, 542 U.S. 88, 101, 124 S. Ct. 2276, 159 L. Ed. 2d 172 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp  18I-186 (rev. 6th ed. 2000); footnote omitted"). Statutory rules of interpretation are also applied to regulations. *Matter of H-N*, 22 I. & N. Dec. 1039, 1041 (B.I.A. October 13, 1999).

42. Being an asylee is a legal status in the United States. *C.J.L.G. v. Barr*, 923 F.3d 622, 637 n.8 (9th Cir. 2019).

43. Accordingly, inasmuch as Mohamed Ahmed was in a legal status when he applied for asylum, and with that application he was seeking to continue to be in a legal immigration status, therefore his application for asylum was

application to maintain status in the U.S., and so falls squarely within the language of 8 C.F.R. § 245.1(d)(2)(ii).

44. Therefore the USCIS decision denying Mohamed Ahmed's Form I-485 because he failed to maintain a lawful status contrary to 8 U.S.C. §1255(c)(2), was not in accordance of law when he fell squarely within the exception to that rule for persons out of status for "technical reasons or through no fault of their own". *Id.*, 8 C.F.R. § 245.1(d)(2)(ii).

WHEREFORE this Court should find the USCIS's decision denying Mohamed Ahmed's application for adjustment of status unlawful and set it aside as not in accordance with law. 5 U.S.C. § 706(2)(A).

III. THE USCIS'S DENIAL OF MOHAMED AHMED'S FORM I-485 WAS NOT IN ACCORDANCE WITH LAW BECAUSE IT WAS PREMISED UPON 8 CFR 245.1(d)(2), THE PROMULGATION OF WHICH WAS BOTH SUBSTANTIVELY AND PROCEDURALLY INVALID

A. THE PROMULGATION OF 8 CFR 245.1(d)(2) WAS SUBSTANTIVELY IMPROPER BECAUSE IT IS AN IMPERMISSIBLE INTERPRETATION OF 8 USC 1255(c)(2)

45. The exception to the bar to adjustment of status in the U.S. to those who fail to maintain a lawful status contain in 8 U.S.C. § 1255(c)(2) for one who fails to maintain a lawful status "through no fault of his own" is indistinguishable

from the standard for equitable tolling. See *Trice v. FDIC*, Civil Action No. 17-cv-1564 (TSC), 2019 U.S. Dist. LEXIS 67474, at *11 (D.D.C. Apr. 22, 2019) ("The 'core' purpose of the equitable tolling doctrine is 'to prevent a plaintiff from being disadvantaged by the expiration of the limitations period when it ran through through no fault of his own." *Dove v. Washington Metro. Area Transit Auth.*, 402 F. Supp. 2d 91, 98 (D.D.C. 2005), *aff'd*, No. 05-7118, 2006 U.S. App. LEXIS 6184, 2006 WL 7136123 (D.C. Cir. Mar. 13, 2006) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S. Ct. 582, 90 L. Ed. 743 (1946)) (additional citations omitted).").

46. "(E)quitable tolling is appropriate only if a petitioner shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *United States v. Baxter*, 761 F.3d 17, 30-31, 411 U.S. App. D.C. 396 (D.C. Cir. 2014) (quoting *McQuiggin v. Perkins*,   133 S. Ct. 1924, 1931, 185 L. Ed. 2d 1019 (2013)). 'To count as sufficiently 'extraordinary,'" we have held that "'the circumstances that caused a litigant's delay must have been beyond [his] control'"; *Head v. Wilson*, 416 U.S. App. D.C. 441, 445-46, 792 F.3d 102, 106-07 (2015,) quoting *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58, 412 U.S. App. D.C. 221 (D.C. Cir. 2014).

47.  8 C.F.R. § 245.1(d)(2) is an impermissible interpretation of the phrase

"technical reasons or through no fault of his own" because it limits the

portion of that phrase pertaining to "no fault of his own" to only one

situation:

(i)      Inaction of another individual or organization designated by regulation to act on behalf of an individual and over whose actions the individual has no control, if the inaction is acknowledged by that individual or organization (as, for example, where a designated school official certified under § 214.2(f) of this chapter or an exchange program sponsor under § 214.2(j) of this chapter did not provide required notification to the Service of continuation of status, or did not forward a request for continuation of status to the Service); or

48. The remaining situations described in that regulation pertain only to the

"technical reasons" exception.

49. It is apparent that there are innumerable situations which could cause a

noncitizen to fail to maintain status in the United States through no fault of

his own other than that described in 8 C.F.R. § 245.1(d)(2)(i), all of which

would be extraordinary circumstances beyond one's control for equitable

tolling purposes.

50. One such example is reasonable reliance upon the advice of counsel. *Peters*

*v. Barr*, 954 F.3d 1238, 1244 (9th Cir. 2020).

51. Another is mental incompetence. *See, e.g., Bills v. Clark*, 628 F.3d 1092,

1094-95 (9th Cir. 2010) (allowing equitable tolling where the petitioner was

illiterate and had "neurological deficits, borderline to mildly retarded level

of intelligence," and "could [not] understand his legal rights sufficiently to make rational choices with respect to acting upon them" (alteration in original); *Stiltner v. Hart*, 657 Fed. App'x. 513, 522 (6th Cir. 2016) (tolling the statute of limitations where detailed evidence showed that the petitioner was in fact "mentally incompetent").

52.  Finally, 8 C.F.R. § 245.1(d)(2) is an impermissible interpretation of the "no fault of his own" exception to 8 U.S.C. § 1255(c)(2) to the extent it fails to allow for the instant situation where Mohamed Ahmed is failed to maintain his status due both through no fault of his own and extraordinary circumstances beyond his control.

53. Mohamed Ahmed has been out of status through no fault of his own and extraordinary circumstances beyond his control because he could not depart the United States nor apply for any legal status in the U.S. other than asylee.

54. Mohamed Ahmed could not depart from the United States because he would be jailed, tortured and his life would be in jeopardy if he returned to Sudan, because of his long time political activities and standing against the government oppression during his college years and after graduation. Form I-589, Application for Asylum and for Withholding of Removal at 5, attached as Exhibit B.

55. Further, Mohamed Ahmed could not apply for any legal status in the U.S. other than asylee because any other status he might have applied for either a) required that he have a residence abroad which he had no intention of abandoning, which was necessarily not the case; b) required that an immigrant visa petition be approved upon his behalf, which was not the case and which he had no possibility of causing to happen or c) require that a nonimmigrant petition to have been approved upon his behalf to classify him as a specialty occupation worker under 8 U.S.C. § 1101(a)(15)(H)(i)(B) or as an intracompany transferee, 8 U.S.C. § 1101(a)(15)(L), neither of which had been filed for him nor was he reasonably capable of causing to be filed.

56. Accordingly, because this was a situation in which Mohamed Ahmed was out of status through no fault of his own and through extraordinary circumstances beyond his control which was not allowed for by 8 C.F.R. § 245.1(d)(2), the regulation is invalid, and denial of his application for adjustment of status upon that basis was not in accordance with law. *Peters*, 954 F.3d at 1244.

WHEREFORE this Court should find the decision denying Mohamed Ahmed's Form I-485 unlawful as not in accordance with law and set it aside. 5 U.S.C. § 706(2).

B. THE AMENDMENT OF THE CODE OF FEDERAL REGULATIONS TO ADD 8 C.F.R. § 245.1(d)(2) WAS ARBITRARY AND CAPRICIOUS BECAUSE IT DID NOT ARTICULATE A RATIONALE FOR LIMITING THE MEANING OF THE PHRASE "OTHER THAN THROUGH NO FAULT OF HIS OWN" TO THE EXAMPLES SPECIFIED IN THAT SECTION.

57. The sole discussion by the Immigration and Naturalization Service, then an agency within the Department of Justice, since abolished,  of the amendment adding 8 C.F.R. § 245.1(d)(2) contained in the Federal Register was:

The term "other than through no fault of [the applicant's] own for technical reasons" has been defined to describe three types of situations. The first, over which the applicant has no control, would not include situations such as an employer's delay in completing required documents to give to the applicant for submission to the Service. An applicant who fails to maintain status because he or she is awaiting a decision on a labor certification request from the Department of Labor or a visa petition from the Service before filing an application for adjustment has not failed to maintain "through no fault of his own for technical reasons" and is ineligible to adjust. The examples given in the regulation are not intended to be all-inclusive.

58. This discussion offers no rationale for this amendment.

59. In particular, this discussion offers no rationale for excluding from the definition of the term "other than through no fault of [the applicant's] own for technical reasons" any example other than those stated in 8 C.F.R. 245.1(d)(2). Rather, it merely describes the amendment.

60. In fact, far from providing a rationale for the limitation of that phrase to the examples in 8 C.F.R. § 245.1(d)(2), the comments to the regulatory amendment actually contradict the amendment's terms by stating "(t)he

COMPLAINT - 19

examples given in the regulation are not intended to be all-inclusive", when, in fact the amendment states that (t)he parenthetical phrase "other than through no fault of his or her own for technical reasons' shall be limited to: the examples given in the regulations."

61. "(A)n agency's action is arbitrary and capricious (where) the agency has not … articulated any rationale for its choice," *Republican Nat'l Comm. v. Fed. Election Comm'n*, 76 F.3d 400, 407 (D.C. Cir. 1996) quoting *Arent v. Shalala,* 70 F.3d 610, 620 (D.C. Cir. 1995).

62. Inasmuch as the USCIS's decision denying Mohamed Ahmed's Form I-485 was, premised upon 8 C.F.R. § 245.1(d)(2), it likewise is arbitrary and capricious.

WHEREFORE this Court should hold that the amendment adding 8 C.F.R. § 245.1(d)(2) and the denial of Mohamed Ahmed's Motion to Form I-485 were both arbitrary and capricious, and so hold them unlawful and set them aside. 5 U.S.C. 706(2)(A).

IV.    THE AGENCY'S DENIAL OF MOHAMED AHMED'S FORM I-485 WAS ARBITRARY AND CAPRICIOUS BECAUSE IT DID NOT CONSIDER AN IMPORTANT ASPECT OF THE PROBLEM

63. The USCIS entirely failed consider an important aspect of the problem involving Mohamed Ahmed eligibility for adjustment of status, that being

whether the fact that he remain in the U.S. to pursue his application for asylum meant he was out of status through no fault of his own.

64. By "entirely failing to consider  an important aspect of the problem" an agency has made an arbitrary and capricious decision**.** *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 43 (1983).

WHEREFORE this Court should find the USCIS's decision denying Mohamed Ahmed's Form I-485 unlawful as arbitrary and capricious and set it aside.

Dated this      day of November, 2021.

/s/ Michael E. Piston
Attorney at Law
38-08 Union St., Suite 9A
Flushing, NY 11354
(646) 876-3772
Fx: 206-770-6350